**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Plaintiff,
v.
MARQUISE MELVIN SHEPARD,
Defendant.

Case No.: 17cr550-MMA

**ORDER RE: DEFENDANT'S MOTION TO DISMISS COUNT 2 OF THE INDICTMENT**

[Doc. No. 82]

Defendant Marquise Melvin Shepard is charged in a two-count Indictment with possessing with intent to distribute approximately 150 grams of methamphetamine (actual), in violation of Title 21, United States Code, Section 841(a)(1) (Count 1), and possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, Section 924(c)(1) (Count 2). *See* Doc. No. 1. Defendant moves to dismiss Count 2 based on the alteration of the condition of the firearm during testing and resulting destruction of purportedly exculpatory evidence. *See* Doc. Nos. 82, 83. In the alternative, Defendant requests a remedial sanction such as suppression of the firearm or an adverse inference instruction at trial. The government has filed a response. *See* Doc. No. 86. The Court granted Defendant leave to file a reply brief. *See* Doc. No. 89. For the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss but finds that a remedial sanction is warranted.

## BACKGROUND

On January 9, 2017, at approximately 10:00 p.m., the San Diego County Sheriff's Department received notification of shots fired near Defendant's residence on Jamacha Lane in Spring Valley, California. During the course of the investigation, officers searched Defendant's vehicle and retrieved a black Norinco 54-1 9mm handgun (referred to herein as "the firearm") from the driver-side floorboard. The firearm was unloaded, missing an ammunition magazine, and inoperable. A red basket was located in the center console area that contained Defendant's wallet, as well as a plastic bag and a tin container containing substances that field-tested positive for methamphetamine. Surveillance footage from earlier that day allegedly shows Defendant brandishing a firearm at unknown individuals on Jamacha Lane and subsequently placing the firearm in his vehicle.

A federal grand jury indicted Defendant on the current charges. On August 21, 2018, Defendant appeared in court for a bond hearing. In support of her client's bond request, defense counsel pointed to the condition of the firearm at the time of Defendant's arrest – inoperable, unloaded – to argue that Defendant posed no significant risk of danger to the community. In response, government counsel argued that "[t]here has been no such determination, that I'm aware of, that it is inoperable." Doc. No. 79 at 12.[1] The court ultimately approved the bond request and Defendant was released from custody.

According to the government, on November 15, 2018, in preparation for trial, the firearm was "function tested" by the San Diego County Sheriff's Department Regional Crime Laboratory "to enable the United States to prove the pistol meets the federal definition of a firearm." Doc. No. 86 at 4. The criminalist who examined the firearm reported that upon initial inspection the firearm was not operable due to coagulated oil and appeared as follows:

---

[1] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.



The criminalist cleaned and lubricated the firearm in order to test-fire it. The gun now appears as follows:



The defense did not receive prior notice of the government's intent to function test the firearm and did not have an opportunity to view the firearm prior to it being disassembled, cleaned, repaired, reassembled, and fired. Defendant argues that the government deprived him of his constitutionally guaranteed access to evidence. Defendant contends that the firearm's condition at the time of his arrest constitutes exculpatory evidence which the government failed to preserve in violation of his constitutional rights. Defendant argues that the photographs and written descriptions of the firearm's prior condition are not evidence of comparable value. Defendant further asserts that the government acted in bad faith warranting dismissal of Count 2 of the Indictment. Defendant requests in the alternative that the Court suppress the handgun

from admission into evidence at trial or provide an adverse inference instruction to the jury.

## Relevant Law

The Due Process Clause of the Fifth Amendment to the United States Constitution requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. U.S. Const. amend. V; *see California v. Trombetta*, 467 U.S. 479 (1984). The Supreme Court has held that "the government violates the defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993) (quoting *Trombetta*, 467 U.S. at 489). The Supreme Court subsequently added a third requirement for establishing a due process violation in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), holding that the defendant must also demonstrate that the government acted in bad faith in failing to preserve the evidence. *See also Cooper*, 983 F.2d at 931.

The Ninth Circuit explained in *Cooper* that "*Youngblood*'s bad faith requirement dovetails with the first part of the *Trombetta* test: that the exculpatory value of the evidence be apparent before its destruction." *Id*. Bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was altered, lost, or destroyed. *See Youngblood*, 488 U.S. at 56. "In evaluating whether the evidentiary value of the evidence was apparent, courts often consider notice to the government based on statements made by the defendant or requests to preserve." *United States v. Marin-Campos*, No. 3:15-CR-2044-GPC, 2016 WL 6440345, at *9 (S.D. Cal. Oct. 28, 2016).

If the government fails to preserve evidence under circumstances that do not violate a defendant's constitutional rights, the court may still impose sanctions including suppression of secondary evidence. *See United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring), overruled on other grounds by *United*

*States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). In so doing, the court must balance "the quality of the Government's conduct and the degree of prejudice to the accused." *Id*. Additionally, the government's failure to preserve evidence may run afoul of the discovery disclosure requirements under Federal Rule of Criminal Procedure 16. *See, e.g., United States v. Hernandez–Meza*, 720 F.3d 760, 768 (9th Cir.2013) (citing Fed. R. Crim. P. 16(a)(1)(E)(i)). When the government violates Rule 16, the court may, *inter alia*, "prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C)-(D).

## DISCUSSION

Under *Trombetta* and *Youngblood*, Defendant must show that the evidence which the government failed to preserve: (1) had apparent exculpatory value before it was altered or destroyed; (2) was "of such a nature that [he] would be unable to obtain comparable evidence by other reasonably available means"; and (3) was not preserved due to bad faith. *Trombetta*, 467 U.S. at 489; *see Youngblood*, 488 U.S. at 58. The question is whether the condition of the firearm at the time of Defendant's arrest meets this test. The Court finds that it does not.

Defendant asserts that the condition of the firearm at the time of his arrest – inoperable, unloaded – supports the defense theory that Defendant did not use the firearm in furtherance of a drug trafficking crime. However, as the Supreme Court held in *McLaughlin v. United States*, 476 U.S. 1 (1986):

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id*. 106 S. Ct. at 1678. As such, the condition of the handgun at the time of Defendant's arrest has minimal exculpatory value.

Moreover, Defendant cannot demonstrate bad faith. Defendant contends that the government function tested the firearm as an ex post facto justification for the alteration of the firearm and destruction of exculpatory evidence. Defendant argues that the testing was unnecessary because a firearm does not have to be operable in order to meet the statutory definition set forth in Title 18, Section 921(a)(3). On this point, Defendant is correct. *See United States v. Harris*, 792 F.2d 866, 868 (9th Cir. 1986) (citing *United States v. Goodheim*, 686 F.2d 776 (9th Cir. 1982)). Nevertheless, the physical features of the firearm are relevant to the government's case-in-chief.[2] Proof that the firearm is capable of properly firing – even if not a statutory requirement – demonstrates that the weapon is a firearm as charged in the Indictment. *See, e.g.*, *United States v. Alston*, 112 F.3d 32, 35 (1st Cir. 1997) (holding that "the test firing, so long as the unjamming and rust removal were admitted [to by the government], properly helped to confirm that the gun was 'designed' to expel a bullet by explosion."). As such, the function testing served a legitimate investigatory purpose and is not proof of bad faith.

Based on the minimal exculpatory value and lack of bad faith, the Court finds that the government did not violate Defendant's constitutional rights by failing to preserve the firearm's condition. Accordingly, dismissal of Count 2 is not warranted. Likewise, balancing "the quality of the Government's conduct and the degree of prejudice to the accused," *Loud Hawk*, 628 F.2d at 1152, suppression of the firearm and all related evidence is not appropriate based on the *Loud Hawk* factors.

Finally, the Court must consider whether the government committed a discovery violation. Federal Rule of Criminal Procedure 16 requires the disclosure of all evidence "'material to preparing the defense.'" *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)). Rule 16 embodies the

---

[2] Pursuant to Title 18, "firearm" is defined, in pertinent part, as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A).

idea that information that is not exculpatory or impeaching may still be relevant to developing a possible defense. *See United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013); *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Even inculpatory evidence may be relevant. A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy. Or he can seek a plea agreement instead of going to trial.").

On February 9, 2018, Defendant filed a motion to compel discovery in which he generally requested all "tangible evidence favorable to Mr. Shepard on the issue of guilt or punishment and/or which affects the credibility of the government's case," as well as "all evidence seized as a result of any search, either warrantless or with a warrant, in this case." Doc. No. 42-1 at 4. The firearm clearly falls under both categories. Yet function testing was performed at the government's direction on a critical piece of evidence without notice to the defense and without providing the defense an opportunity first to physically inspect the firearm. While this appears to have been an oversight rather than a purposeful nondisclosure, the government failed to honor its disclosure obligations, denied Defendant his statutory right to inspect evidence material to his guilt before significantly altering the evidence, and deprived Defendant of the opportunity to seek relief from the Court prior to its alteration.

In light of these circumstances, the Court finds that a remedial sanction is justified. The Court has the discretion to prohibit the government from introducing evidence related to the firearm at trial or "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C)-(D). Cognizant that any sanction must be no "harsher than necessary to accomplish the goals of Rule 16," *United States v. Gee*, 695

F.2d 1165, 1169 (9th Cir. 1983), the Court finds that the appropriate remedy is exclusion of the actual firearm and any photographs of the firearm in its altered state at trial.[3]

## CONCLUSION

The Court **DENIES** Defendant's motion to dismiss Count 2 of the Indictment and **ORDERS** the actual firearm and any photographs of the firearm in its altered state be excluded from admission into evidence at trial.

**IT IS SO ORDERED**.

DATE: May 20, 2019

HON. MICHAEL M. ANELLO
United States District Judge

[3] The government separately moves to admit the testimony of a firearms expert. *See* Doc. No. 67 at 6. The Court will consider the effect of this ruling on that motion, if any, together with the other issues raised by the parties *in limine*.